May it please the Court, I'm Bill Stark, I'm the attorney for Kathy Cooper and also for Susan Walker, who will be heard later today. Ms. Cooper brings her claims against T-Mobile. There are two basic principles at issue here that the Court has an opportunity to address. One legal matter is that the district court judge asserts that violations of the family leave law don't count unless there is some actual prejudice against the person, against the employee. What's your response to the concept that Ragsdale v. Wolverine Worldwide, Inc., cited by the U.S. Supreme Court, seems to require actual harm from a technical failure of the employee or the employer to notify the employee? I can't try to fool you and say that I can address Ragsdale specifically. But what I can refer you to is the Batchelder v. Lee case, which expressly states that any activity such as what happened to Ms. Cooper that would shill her rights or the rights of other people to their family leave rights is a violation. And the person in that in and of itself is grounds for a finding in her favor on that violation. The reason I ask that, of course, Ragsdale is a U.S. Supreme Court case. We are bound by the Supreme Court. And according to that case, the FMLA, and I'm quoting, provides no relief unless the employee has been prejudiced by the violation. Under those circumstances, why is this an actionable claim? Does your client claim, based upon the technical violation, that she was injured? Yeah. And in what way? In addition, in the brief, I went on to explain that because of their failure to give her the special status, not special status, but to give her the status that she deserved of being on intermittent leave, because they botched all of that on, that whole process was botched up not only in terms of what they told her but other people. She was unable to exercise her rights under family leave law to take intermittent leave when she could and when she needed to. She was denied that right and was unable to take advantage of that. Then they come along and say your performance for various reasons in this last month or two is deficient, and she is still being treated for this condition that had sprung up in the dental surgery the year before. So her inability to use her ‑‑ use any time off that she had coming to her and during this period of time was prejudicial to her. Also, the fact that she had asserted an interest in trying to get information about her leave. She had ‑‑ she was asking for intermittent leave, and they were not telling her. This went on for some time. So in that particular instance, they took the information that she was requesting leave and they used that against her, taking that into account. But I thought they did. Correct me if I'm wrong, but I thought that T‑Mobile did approve her continuous and intermittent leave. They did not do that. What they did was they gave her leave earlier. Then when she asked for intermittent leave, to be put on intermittent leave, she was never put on that status. For a couple of months, her supervisor knew that she was gone for medical treatments from time to time, and they just adjusted things informally. But the company itself, the libel entity itself, never put her on that status. Then when she changed supervisors and was subjected to all the intensive supervision for a couple of months, then at that point, she was going to medical visits outside of her work hours, so she was getting by. But she was going to be switched to another supervisor shortly before her termination because they rotated. And so whether or not she would have been able to assert any intermittent leave during that period of time was up in the air as well. Getting back to Judge Smith's question, in the Xin Liu case, if they gave her the time off but they credited it to the wrong category, there would be prejudice, right? Yeah. But here, it's not that they credited it to the wrong category. They gave her the time off. You're saying they just didn't credit it to family medical leave. Right. But they didn't credit it to any wrong. They didn't take it away from any other category. They put her in a position of having to use whatever vacation time and other kinds of leave in order to be absent from work because she did not have knowledge of that time. Is that in the record that she took vacation time? Originally, there was a block of time she took off, right? Yeah. And then after that, what was it, about another 40 hours or so periodically? And then she changed her shift. Right. And so she would go to the doctor in the morning. Right. So did she actually – does the record show she actually was required to use her vacation time? No. I can't recall anything in the record that said that actually happened. But, see, the employer can't have it both ways, don't you think, because if they don't give the information to the employee, they inherently prejudice the employee. This is not a matter of mischaracterization. This is more devious behavior than mischaracterization. If the employer says, take whatever you need, don't worry about it, and it doesn't come out of her sick leave or vacation leave or, you know, a certain budgeted amount of administrative leave, how is she prejudiced? Because she does not have that information with which to make informed decisions about whether or not to take family leave. It's been denied to her. But under Ragsdale, following up on Judge Moskowitz's question, I mean, this is almost a rose by any other name smells as sweet. If she's not docked on vacation time or whatever, if T-Mobile committed a technical violation of FMLA not providing the information which they're supposed to do, but she gets the time, takes the time she needs, and she's not docked for it, are you saying that notwithstanding Ragsdale, that we have to find a violation of the FMLA sufficient that it's a cause of action here? Yes, because when you look at the surrounding circumstances, this is not a matter of ‑‑ we're not here just because of the technical violation. We're here because she was terminated. And she was terminated during a period of time where she was still making use of ‑‑ she was still under treatment for a condition that was recognized under family leave. I think the courts, I think the law, the intent of the law was to have the employers provide this information. If they provided the information and then they mischaracterized the leave, they made some clerical error or something like that. That's one thing. But you have enough information from all these affidavits and other cases and so on, or not in other cases, but in this case, that there was a deliberate withholding, an intentional act of withholding information from a qualified person. And the consequences included termination. We're going to keep up with your argument. We're going to give you the full two minutes when you get here. But we're going to let T-Mobile have its opportunity now to respond. Thank you, Your Honors. Jim Severson of Bingham McCutcheon, if it pleases the Court. I think that we're apparently reading two different records here. The record in this case is absolutely clear that Ms. Cooper understood that she was on intermittent leave. She so testified at her deposition. It's in the record at Supplemental Excerpts 14. It's also in the record at Supplemental Excerpts, excuse me, page 15, that she took what she needed to take. And she said a couple of times that she took what she needed. So there is no mischaracterization. It is a rose. It smells as sweet. She knew she was on intermittent leave. She took as much as she wanted to take. And the record reflects that, indeed, her manager made it easier for her to do so because there are normal reporting requirements that people have to go through. But in this case, the manager said, well, just call me and let me know when you need to be away and go ahead and take the time. Does the record show any employee manuals that discuss the Family Leave Act? Yes. There's an excerpt from the Employee Handbook that discusses that, I believe, Your Honor. Certainly it was the case. In the record? I'm not sure that we put into the record the FMLA provisions in the Employee Handbook in this case, but there was one. In this case, in the Walker case, one of the allegations, I don't know if you're arguing that case also. Yes, sir. One of the allegations is that they didn't tell people about the Family Medical Leave Act and they made it more difficult. They'd ask questions. They'd say, we'd get back to you, and they'd never get back to you. If there were a manual that was given to the employees that covered it, yeah. There clearly was, and there were also postings, and I think there's evidence in at least the other case of the postings. That didn't really come up in this case. Is that in the record, that there were postings and that the manual was given to them? Yes, Your Honor. Okay. In any event, in this particular case, in the Cooper case, it is stipulated and understated. Are you sure? Because I miss that if it's in the record. Maybe at some point you can point out in the record where there's that the Family Medical Leave Act was distributed to the employees and there were postings. One of the plaintiffs in one of these two cases testified that they would look in the break room where they had all the postings and they didn't see any posting about the leave act. But maybe you can give us the supplemental excerpt or the excerpt of the record citation. Yes, Your Honor. But, you know, the facts of this case, as Judge King pointed out, he kept his eye on the ball in terms of what the issue was in the case. He had to decide whether there was evidence supplied by the plaintiff that the leave was a negative factor. And what happened in the case involving Ms. Cooper was she was granted, she applied for and was granted FMLA leave on a continuous basis. She ended up coming back from that leave early, but solely volitionally, and that's in the record. She then was applied for and was granted and testified that she took intermittent leave, and she did that through the end of December. At that point, her doctor's certification for that intermittent leave had expired, yet the company allowed her to continue taking intermittent leave to the extent she wanted and needed, and she so testified that she took as much as she needed all the way through January. At that point in February, her shift changed so that her need to have doctor appointments in the morning were no longer an issue. She had her appointments in the morning, but her shift didn't begin until the afternoon. And the termination action didn't happen until well after that was done. And, indeed, the termination action was based on the same types of work performance issues that had been in existence prior to any leave that she had been warned and written up for prior to any leave and which continued then thereafter. So, you know, the judge was very careful, I think, in deciding exactly what he had to decide, and that is was there any evidence that leave was considered a negative factor. And he scanned the record, indeed, I think must have looked through the deposition of the plaintiff in detail because the judge, in his opinion, isolated matters that had not been brought to his attention by plaintiff's counsel and dealt with them and said this does not raise any inference and here's why. So we suggest that he not only got it right, but he got it right doing a careful analysis that the law required him to do to determine whether there was any issue of fact regarding this notion of whether leave was taken into account as a negative factor. So from our perspective, Your Honor, we, you know, this is a situation where the performance issues were absolutely clear cut and documented. Yes, she disagrees in some respects that her performance was as bad as the managers felt it to be, but the law in the Ninth Circuit for a long time has been that simply criticizing your manager or saying that your subjective opinion about your performance is enough to raise an issue of fact, it does not raise an issue of fact. So our position in this case is the judge was looking to see whether there was any proof of negative factor and decided and found on the record that there was no such proof and that the termination was based on performance. And we contend that that decision was correct. We also contend that the discretionary decision that the court made with respect to the consideration of some of the evidence was also correct. That wasn't addressed by counsel, but it was part of the issues presented to the case. That was clearly a situation where the judge had discretion, he exercised it properly, not to consider certain matters that as a matter of law should not have been considered. Thank you very much, Your Honors. Thank you very much, counsel. You have two minutes for rebuttal. Can I ask you just right off the bat, according to my notes, there were 17 different notations of inferior performance or disciplinary action that Ms. Cooper was given. Do you dispute the fact that there was, in fact, defective performance by your client in terms of her job performance? Yes. You see on the record, that's one of our criticisms of the district court judge, because if you take all of the evidence into account, you see a dispute, an issue of fact that should be decided by people being able to observe the credibility of the witnesses, et cetera. But that's certainly true, counsel. But on the other hand, everything doesn't have to be undisputed in order for there to be a summary judgment, does it? When there are substances issues, when they say they terminated somebody for performance and there are disputes about the quality of that performance. But the question is whether there are material issues of fact. If you have, just taking what I said for discussion purposes, if there are 17 different instances of defective performance, at least according to what I see in the record, many of which your client expressly agrees with or does not dispute, and there might be one or two that your client disagrees with, isn't that sufficient for the district court to grant a motion for summary judgment on the basis that there are no material issues of fact? No. In this case, Your Honor, it wouldn't be because the judge weighed evidence, weighed evidence of material facts, and that gets into the objective and subjective thing, which is a good, interesting issue for the court. They're saying that the plaintiff is relying on subjective information. That's a projection of their own reasoning under the plaintiff. The plaintiff is relying on objective information. The objective information of her actual quantity of work and quality of work that is documented in their very own objective records, and including the records that show that of this particular supervisor, of the six people he supervised, she was in the middle of the pack. That's objective evidence. Their subjective evidence is that list of 17 things or whatever you want to call it that they pulled out of here and there, cherry-picking is what the district court judge called it, in order to conjure up something in a month and a month and a half to get rid of this particular employee who maintained her eligibility for family leave and at a time where other supervisors, including Ms. Walker, were asking for intermittent family leave as well.  Breyer. And if you were to give us the three best pieces of evidence, because I think what Judge Smith is saying is that if you're taking the evidence in the light most favorable to you, no reasonable jury could find it in your favor. There's no material dispute of fact. So what's the three best pieces of evidence that you think would convince a reasonable jury to find in your client's favor? Her performance evaluation that she got in I think the first week of February given to her in which she was evaluated in a positive way throughout her performance, that is objective criteria based on objective data, and that was her performance. And as a result of that, their system provided her with a bonus because of the quality of her performance. Then they fired, a couple months later, they fired this person. That's one. With a meritorious bonus. What would be the other two? I mentioned that when you mentioned evidence. The evidence there also relates to the timing of this termination. But there was a two, there was a, as I understand the record, she was terminated seven months after she returned from her two-month leave. So there's a five-month gap there. That's really not much of a temporal proximity, is it? She, yeah, no. She was eligible. She maintained her eligibility for family leave. They can't prevent the proximity by refusing to provide people with the information. They don't argue and they can't dispute that she was and should have been on, placed on formal intermittent leave. She did not ask for that, did she? Yes. She did ask for that and they refused it? Yeah. She kept going back to them and asking for the information. And you have undisputed evidence. Oh, you're talking about the information again. Yeah, yeah. I'm talking about the actuality that whenever she wanted to take leave, she was given the chance to do that. Is there anything in the record that indicates that she was factually prohibited or denied the opportunity to take leave? Yeah. Putting aside for a moment the fact that she received the formal notification. Well, without the formal notification, she could never take it. So you don't believe that a rose by any other name smells this sweet? Oh, no. I mean, people went through a lot of trouble to try to protect families with those laws and protect that leave. They didn't expect that people are going to deliberately not inform people. For example, I don't think you're going to find in the record any kind of policy or any kind of statement about any posting. I don't think it's in these records. What you're going to find is that their policy was, as they reported, the HR person told them or didn't tell them, which is you're a manager or you're a supervisor, so you're not eligible for intermittent leave and probably heard but, but, and then, well, we'll get back to you. That is the evidence you have of their activity, their action. They don't have anything in the record. And I think that the district court judge commented on our, well, I'm sorry, that's the Walker case, but commented in the Walker case. Speaking of which, why don't we get to that? We've kind of run over a little bit. I realize that you gentlemen are doing both, so why don't we, we're going to submit the Cooper case then.
judges: Thompson, Smith, Moskowitz